The Rust Engineering Company engaged to build a sixtrack bridge for the Lehigh Valley Railroad over state highway route No. 29 in Weequahic Park, Newark. Labor unions objected to the open shop, insisted upon the company employing none but union labor and resorted to picketing and violence to enforce their demands, whereupon an injunction issued at the suit of the company, restraining the unions and individuals therein named and all persons associated with or acting in concert or combination with them from, inter alia:
(a) Molesting complainant's employes.
(c) Picketing the works.
(e) Intimidating and annoying complainant's employes.
(h) Molesting complainant's employes in going to and from work, and,
(k) Ordering others to commit the foregoing prohibited *Page 286 
acts — all with intent to coerce the employes from continuing in complainant's service.
This tabloid of the specifications of restraint, and there are more, is sufficient for the decision.
In these contempt proceedings the respondent Leo Staire (Staiger) is charged with violating (a), (c), (e), (h) and (k) and the respondent Earl Wm. Morgan is accused of transgressing (k).
The particulars of the offenses alleged in the petition and which we find to be established by the evidence beyond a reasonable doubt are these: On the afternoon of February 12th, 1932, the respondents were served with a copy of the injunction while sitting in Morgan's automobile close by the works where they, with others in cars, were loitering. The copy was handed to one of the occupants of Morgan's automobile and the occupants were informed by the server of the general nature of the document, that it was a copy of an injunction restraining picketing. That was sufficient service, they were put on notice; if they failed to read it, the fault was theirs. At five o'clock, quitting time, four of the company's men starting for home in a car, accompanied by a guard in another car, were immediately followed by the respondents in the Morgan driven automobile who repeatedly tried to crowd them off the highway into the curb, all the while, intermittently, calling them vile names and threatening to kill them if they did not get off the job. The chase was over a ten-mile course, to Irvington, into South Orange and Maplewood, far out of the way of the employes, homebound, they trying to escape their pursuers, until driving eastward on Springfield avenue in Irvington, after a circuitous route through Maplewood, Morgan's car outran the employes' car to a traffic light at Sanford street where Staire got out and demanded of the traffic officer that he search the oncoming car and arrest the occupants, claiming that they had pick handles and had threatened him on the public highway. The officer sent the employes to the station in the police patrol where the charge was dropped and they were released. *Page 287 
The defense is an alibi for the time before and up to, as the respondents claim, their car pulled alongside the employes' car, then halted in traffic on Lyons avenue at Clinton Place, some two miles from the works. There, so Staire testifies, the employes shouted, "you better lay off us; you will get a dose of this," menacingly showing the pick handles; and being threatened on a public highway and to learn why and to apprehend the offenders, he says, they gave the eight or ten miles chase in and out of streets through four towns until on the way back he had them arrested as already told.
It is a good story and well told, but attenuated. It does not account for the continuity of the molestations that started at the works at five o'clock and ended after six, when Staire landed the employes in his home town police station where he hoped union labor sympathies would further his malice. And credulous as we may seem to be, we cannot fancy with him, these hunted and scared employes assaulting, so innocent and blameless, him; his sense of outrage and his long and dogged chase and anxiety to lay hold of them simply to vindicate the law and to bring them to justice. It is too trying.
The alibi is that before the contact on Lyons avenue at Clinton Place, Staire and Morgan were at union headquarters on High street, Newark, from the early afternoon, and that about five o'clock Morgan started for home; that Staire invited himself to ride home with him and that they took along a fellow member, Crowley, whom they dropped off near where he lived. The three lived in the same general direction from headquarters. Crowley verifies his angle, and one Farina and the steward of the house, McMullen, testify to Staire's presence at headquarters during the afternoon, Farina saying he played pool with him; and McMullen, that he saw him as he left with others about five o'clock. The alibi has weak spots which will not be rehearsed, but we pause to comment, that fellowship in the union was not an unimportant factor with the supporting witnesses in helping a member out of a hole. The alibi is completely shattered by the convincing proof of Staire's and Morgan's presence *Page 288 
at the works during the afternoon and of their persistent assaults on the employes through the chase, and it may be added that their fantastic story of defenders of safety of the public highways contributes not a little to its discredit.
The respondents contend that, though they be found guilty of defying the injunction, they cannot be adjudged in contempt upon the charges as laid against them in the petition.
Contempt of an injunction is a criminal offense, indictable in the law courts. When equity, in vindication of its dignity and of its power and authority to enforce the law of the land, exercises its jurisdiction of disciplining violators of its commands or flouters of its writs, the petition, which corresponds to an indictment, must charge the offense as explicitly as is required of indictments at law. In the case in hand the petition charges the respondents with violating specific commands of the injunction addressed to the defendants in the injunction suit and to "all persons associated with or acting in concert or combination with them," and the point they make is, that they were not parties to the injunction suit and that they are not persons within the class to which the injunction was directed. The petition does not charge them as members of the class and, had it, there is no proof that they were. As strangers to the injunction, it charges them with infractions forbidden only to the defendants to the injunction and members of the class. The injunction does not run against aiders and abettors, and that they were, but they are not charged in that capacity. The offending acts are set out in the petition with particularity, but only as premise to the charge of violating some of the commands of the injunction which the parties to the suit and the members of the class alone were not to disobey.
The respondents were called upon to meet the charge, not the premise. Had the premise been charged as spurning and in defiance of the injunction by the respondents or as aiders and abettors of the defendants to the injunction, they would have been faced with an entirely different indictment, that of obstructing the administration of justice, for which they would be amenable though strangers to the injunction. The *Page 289 
distinction between offense of disobeying the commands of an injunction by those to whom it is directed and the flouting of an injunction by strangers is emphasized by the authoritative cases. It is illustrated in Seaward v. Paterson (1897), 1Ch. Div. 545. There the question arose before Lord North, and went up by appeal to the lord justices of the court of appeals. The judge below and all the judges of the court of appeals took the same view of the question in careful opinions. Each of them answered and overruled the positions taken by counsel for the respondent, which was "there there was no jurisdiction to commit for breach of an injunction a person who is not enjoined by it, who is not a party to the action, and who is not even a servant or agent of the person enjoined. There has been no contempt by interference with an officer of the court. No one can be committed for a breach of an injunction who is not a party to the injunction, and enjoined by it." Each judge declares that this is not a correct statement of the law. In the course of his discussion, Mr. Justice Lindley said:
"Let us consider what jurisdiction the court has to make an order against Murray. There is no injunction against him. He is no more bound by the injunction granted against Paterson than any other member of the public. He is bound, like other members of the public, not to interfere with, and not to obstruct the course of justice; and the case, if any, made against him must be this: not that he has technically infringed the injunction which was not granted against him in any sense of the word, but that he has been aiding and abetting others in setting the court at defiance, and deliberately treating the order of the court as unworthy of notice. If he has so conducted himself, it is perfectly idle to say that there is no jurisdiction to attach him for contempt, as distinguished from a breach of the injunction, which has a technical meaning."
 * * * * * * *
"The law is defined in a way which is familiar to anybody accustomed to the procedure in chancery. A motion to commit a man for breach of an injunction, which is technically *Page 290 
wrong unless he is bound by the injunction, is one thing; and a motion to commit a man for contempt of court, not because he is bound by the injunction by being a party to the cause, but because he is conducting himself so as to obstruct the course of justice, is another, and a totally different thing. The difference is very marked. In the one case the party who is bound by the injunction is proceeded against for the purpose of enforcing the order of the court for the benefit of the person who got it. In the other case the court will not allow its process to be set at naught and treated with contempt."
The distinction between the two classes of contempt is recognized in Chisolm v. Caines, 121 Fed. Rep. 397; Garrigan
v. United States, 163 Fed. Rep. 16; Berger v. Superior Court,175 Cal. 719.
The respondents are held not guilty as charged and the petition is dismissed.